DOWNING CO. *v.* UNITED STATES (No. 2084).[1]

1. EVIDENCE, EXAMINATION OF EXHIBITS.

Where samples of the importations, used sugar bags, were in evidence and importer's witness conceded them to be typical and testified specifically regarding them, it was entirely proper for the Board of United States General Appraisers to examine them to ascertain whether there were holes in them and whether the fabric was sound for the purpose of testing the accuracy of the witness's statements regarding them.

2. EVIDENCE, WEIGHT AND SUFFICIENCY—PRESUMPTION IN FAVOR OF BOARD's FINDING.

The evidence as to the condition of used sugar bags consisted of the testimony of one witness for the importer and one witness for the Government, both competent, and samples conceded by the importer's witness to be representative. Upon the testimony and an examination of the exhibits, the Board of United States General Appraisers found the issues against the importer and sustained the collector. This court is unable to say that the finding of the board was against the weight of the evidence or wholly unsupported by it, and the board's judgment is affirmed.

---

[1] T. D. 38730.

United States Court of Customs Appeals, May 23, 1921.

APPEAL from Board of United States General Appraisers, G. A. 8397 (T. D. 38572).

[Affirmed.]

*Allan R. Brown* for appellant.
*Bert Hanson*, Assistant Attorney General (*Martin T. Baldwin*, special attorney, of counsel), for the United States.

[Oral argument May 3, 1921, by Mr. Brown and Mr. Baldwin.]

Before SMITH, BARBER, and MARTIN, Judges; DE VRIES, Judge, participating in the decision by agreement of counsel.

BARBER, Judge, delivered the opinion of the court:

This case involves the proper classification of four carloads, some 50,000 in number, of empty sugar bags which have been used. They were made of a twilled, woven jute fabric. There were three entries and two protests. All the merchandise was classified and assessed at 35 per cent ad valorem under the provision for manufactures of vegetable fiber in paragraph 284 of the tariff act of 1913. This was done upon the theory that such of the bags as needed that treatment could be repaired and washed, after which the entire importations could again be used as containers.

The protests were overruled by the Board of General Appraisers. The evidence was considered and the case decided by Board 2, none of the members of which saw the witnesses or heard the testimony, which was taken at Boston before General Appraiser McClelland, a member of another board.

The claims of importer, embodied in its protest, are, in substance, that only 30 per cent of the merchandise is dutiable as assessed; that 40 per cent should be classified as waste, dutiable at 10 per cent ad valorem under paragraph 384, and 30 per cent allowed free entry under paragraph 566 as paper stock.

Two witnesses gave testimony, one a member of the importing firm, on behalf of importer; the other, the examiner of bags, who passed these importations on behalf of the Government.

The importer's witness testified that his firm were dealers in burlap bagging exclusively; that they repaired and resold the bags, if they could, for further use as bags, and if not, sold them as patches or paper stock; that that had been his business since 1905; that if it was commercially feasible they repaired the bags; that the next most profitable use for them was patches, and the last for paper stock; that they were willing to spend in the repairs on each bag "about two cents;" that he was personally familiar with and saw the importations; that they were graded and separated under his supervision; that "just about 30 per cent" thereof were suitable to be repaired to become commercial bags; that the remaining 70 per

cent were used or disposed of as follows: "About 40 per cent for cotton patches and 30 per cent for paper stock." He did not state the extent of his examination of all the bags, other than as above set forth, nor give any further details of his supervision of the separation thereof into the three classes mentioned, nor state who, in fact, did it.

There were produced at the time the testimony was given three official exhibits, each one being taken from a different entry. Importer's witness testified they were a fair average of the lot and fairly represented the average quality of the entire shipments. His attention was called to each bag in these three sample lots, one of which contained 7, another 5, and another 8 bags. He said that "about 2 bags" in the sample containing 7, "1 bag" in the sample containing 5, and "about 2 bags" in the sample containing 8 were fit to be repaired; that there were in the entire lot of twenty "about 5 bags for use as bags * * *. About 10 bags for patches, and the rest for paper stock." He was asked the following question: "These estimates that you have given of 30, 30, 40 per cent—are those, in your judgment, conservative estimates of the uses to which those particular shipments were put?" to which he answered, "Positively." The bags that he claimed were not worth repairing were so, he said, because the fabric was too sticky, or was coated with sugar, or was too weak, or contained too many holes. He also said it was not commercially practicable to wash the bags; that there was no place in Boston to do it. He did not state any prices at which they were bought or sold, or how he reached the conclusion that "about two cents" was all that it was commercially profitable to spend in repairing a bag.

The examiner testified that he had had some twelve or fifteen years' experience in examining bags, although this lot was the first of the particular kind that he had passed; that he opened the cars containing the bags; that he personally examined the four carloads; that in one car, containing 16,500 bags, there were 1,650 bundles; of these, he examined what he could see on top of the car, about 25 per cent, besides what was brought to the appraisers' stores by importer; must have gone through 400 bundles, he did not open them all, but probably opened 25 to 30 bundles; was there with the importer; that another car contained 10,250 bags in 410 bundles; that he examined these the same way; that two bundles were taken to the appraisers' stores by the importer as a representative sample; that he did not know what it was commercially practicable to spend in repairing a bag to render it fit for reuse; that some bags would have to be washed and mended; that he did not know any place where they washed bags; that he was of opinion they were all

practically sound; that about 25 per cent had rips and tears, most of which could be repaired; that they were indiscriminately mixed with the others; that if a bag was torn down the sides or ripped through the middle it was not repairable; that some of the bags were not worth repairing; that he had seen other bags repaired and had a sample of repaired bags with him at the time he gave his testimony; that his examination of the bags, for the purpose of determining how many were repairable, was confined to a few, "about 2 bundles;" that because they were, in his opinion, repairable, he returned them all as usable bags.

The Board of General Appraisers inspected and examined the 20 bags which comprise the official exhibits, and concluded, in substance, therefrom, as shown by their decision, that these representative samples did not bear out the testimony of the importer's witness that only 30 per cent of the bags were fit for reuse as bags and the balance fit only for the other purposes testified to by him.

The board was of opinion that three of the samples containing seven bags were whole, good, and sound; three others were whole and sound, with the exception that they were stained and sticky with sugar; that one was cut in several places in addition to being stained with sugar, but could apparently be used as a cotton patch.

As to the sample containing eight bags, it concluded seven were whole, sound, and good, fit for reuse as bags, while one was badly stained and hardened with sugar.

Of the sample containing five bags, three appeared to it to be whole, sound, and good, while two were badly stained.

As to importer's claim that the sticky bags were not fit for reuse, and that it was not commercially practicable to wash them, it was of opinion that the evidence did not sustain the claim.

Upon the testimony and exhibits, the board said that it was reasonable to suppose that some few bags were probably not fit for reuse; that, as they were indiscriminately mixed, the burden was on the importer to show by a fair preponderance of the evidence what proportion or percentage of the bags consisted of cotton patches, and what, if any, fell within the class known as paper stock; that importer's testimony fell short of establishing any accurate or reliable basis upon which the board could order a reliquidation, and did not overcome the presumption of correctness in favor of the collector's classification and assessment.

The importer contends, in substance, that the testimony of its witness has been neither discredited nor contradicted; that the burden of proof resting upon it has been discharged; that it establishes the claims made in its protest, and that, therefore, the decision of the board should be reversed and the protests sustained.

This contention rests, in substance, upon two propositions.

One, that the testimony given by its witness must be accepted as true, because of his alleged superior knowledge in the premises and familiarity with the imported bags. In connection with this it is urged that the Government's witness had no such knowledge of the bags here or experience or familiarity with bags as entitled his testimony to consideration.

The other, that the members of the Board of General Appraisers exceeded their authority in going beyond the testimony and undertaking to arrive, by personal inspection of the samples, at a conclusion as to their fitness for reuse as bags.

We do not agree with either of these propositions. The exhibits were conceded by importer's witness to be typical of the importations, and he testified specifically with relation to their physical condition. It was entirely proper for the board to examine the same to ascertain whether there were holes in a bag and whether the fabric was sound, for the purpose of testing the accuracy of the witness's statements with reference thereto. A bag that was whole and sound obviously needed no repairing. The board did not, from its examination, undertake to say what it would cost to repair such bags as might need it.

The testimony given by the customs examiner was clearly relevant to the issue, and was received without objection on behalf of importer. The degree of his familiarity with the importations and his knowledge and experience as to using and repairing bags goes only to the weight to be given his testimony, and not to its relevancy.

It will be noticed that the importer's witness in undertaking to state how many of the bags were fit, or could commercially be made fit for use as bags, gave estimates only, and it will also be noticed that his estimated percentages on the whole importations and the percentages that result from his testimony as to the representative 20 bags are at variance. This is illustrated by the fact that in the one connection he testified that about 30 per cent were entitled to free entry as paper stock, while in the other that 10 bags out of the 20, which is the equivalent of 50 per cent, were paper stock.

The classification and assessment of the collector are presumed to be correct. Upon the importer is cast the burden of establishing by a fair balance of the evidence that it is not so. Importer has called one witness upon the issue who has given his estimates as above stated. The Government has also called one witness whose testimony clearly tends to contradict that given on behalf of importer.

The testimony of each of these witnesses is to be weighed in view of their disclosed familiarity with the subject matter and their interest in the result of the litigation. Presumably the Board of General

Appraisers has done this, and it has concluded that importer has failed to establish its contention.

Upon the testimony alone we would hardly be warranted in saying that the judgment of the board was wholly unsupported by the evidence, or against the weight thereof, and the board's examination of the exhibits seems to have fortified the conclusion it reached.

The judgment of the Board of General Appraisers is *affirmed.*